JONATHAN W. COBBS v. JARED H. HIXSON ET AL.

*Public officers—Agreement to perform duties of city treasurer—Bond*
*—Public policy.*

A bond given by an outgoing city treasurer to his successor to secure
the performance of an agreement between the two, pursuant to
which the obligee became a candidate for said office and the
obligor for mayor, who was to continue to perform all of the
duties of treasurer, he being at the time a defaulter, which fact
was unknown to the public, but was communicated to said
obligee, cannot be held valid for any purpose.

Error to Wexford. (Aldrich, J.) Argued April 24, 1889.
Decided June 14, 1889.

Debt. Defendants bring error. Reversed, and new trial
denied. The facts are stated in the opinion.

*Smiley & Earle* (*J. R. Bishop*, of counsel), for appel-
lants.

*M. C. Burch*, for plaintiff.

CAMPBELL, J. Plaintiff, who was treasurer of the city of
Cadillac, intrusted defendant Hixson with the custody and
management of the city funds, and took his bond, with the
other defendants as sureties, to secure his faithful conduct.
The defendants rely for defense on illegality in the arrange-
ment, and on fraud alleged to have been committed against
them by not informing them of the situation.

Hixson, in the spring of 1886, being city treasurer, had
mingled the city funds with his own, and was not in a con-
dition to realize from his investments, without some delay;
the sum for which he was accountable being about $9,000,
which, with other moneys, he had put into logs.

The story that Hixson told, which may have done injustice

to Mr. Cummer, who was mayor, and going out, is that Cummer asked Hixson to take a nomination as mayor, for which the election would be assured.

As Mr. Cummer was neither party nor witness, he of course was not able to be heard in the cause, and should not be misjudged.

Hixson says he told him that he expected to run again and be elected as treasurer, and that the condition of the funds was such, as before stated, as would prevent him, if he left the treasury, from being able to procure the funds to settle up with, while, if he continued in office, he could meet all orders as they came along, and get back his money; that he told Cummer that, unless he could find some one who would leave the funds in his hands, he could not accept the nomination as mayor, because he could not afford to take the money out of his business; that Cummer said that any one of Hixson's friends who would leave the funds in his hands, and was acceptable, could be elected treasurer. Hixson then applied to plaintiff, telling him what he said had taken place with Cummer, and assuring him that if he would consent to run for treasurer he would keep the accounts as before,—would keep the books, render reports, pay vouchers, and plaintiff need do nothing but sign the reports.    He also told him how he had invested in the logs, which would bring in a good return, and be profitable.    Plaintiff agreed, and both were elected.    This bond was given to secure the proper accounting, reporting, and payment of the funds, as the city treasurer was bound to do.    Plaintiff receipted for the balance due on the closing of Hixson's term, and Hixson received and paid out in the usual way the city funds.    He paid out rather more than he received from various sources, but in some specific funds the receipts exceeded expenditures, and for these excesses judgment was rendered on the bond, but no recovery was allowed for the balance which was due when

Hixson left office, and which remained invested, with his private funds, in the logs.

Whether, if the dealings were otherwise legal, the sureties would be discharged by their ignorance of what Hixson had done with the funds which he should have paid over on leaving office, is a question we shall not consider. It does not appear from the record how much or how little the sureties knew about the facts, and no one but Hixson has thrown any blame on Mr. Cummer. The nature of the dealings as legal or illegal is a more important question, and fairly presented.

The charter of Cadillac, being made subject to the general law concerning the incorporation of cities, has not left the treasurer at liberty to treat the public funds as his own. By section 2481, How. Stat., the treasurer is expressly required to keep all public money separate from his own money, and a failure to do this renders him liable to summary dismissal from office.

This case presents the singular case of a man representing that the retiring mayor was assuming and agreeing to provide Hixson and plaintiff with the two most important offices in the city, and their election, with an understanding between Hixson and his successor that, except in name, Hixson was to fill both offices. The statute provides that no defaulter to the city or any public body shall be elected to any city office, and that such election shall be void. Section 2439. In this case Hixson and plaintiff, at least, combined to conceal Hixson's misconduct, and to put him in one high office, and to put plaintiff in his place in the financial office, in which he had defaulted and violated his duty. The express purpose was for screening him from liability, and continuing him in custody of the funds of the office in which he had been guilty of malversation, and representing moneys as paid over and accounted for which he had invested illegally in his own name and could not produce,

and which by his subsequent failure were lost, so far as he is concerned, although plaintiff had to answer for them.

It is bad enough for any person or combination to undertake to dispose of elective offices. But it would be difficult to imagine any worse means of corruption and mischief than conspiring and succeeding in disposing of them for the express purpose of concealing the misconduct of a financial officer, which made him legally disqualified for holding longer, and putting at the head of the city government a defaulter, who would not have been eligible to any office at all.

The bond in suit here was given in pursuance and furtherance of the illegal agreement referred to, and cannot be held valid for any purpose. It is not pleasant to think that people of any city can have elective offices filled by such methods. To hold that such intrigues can be legally carried out would be monstrous.

A community that would knowingly tolerate it would not be fit for self-government. Persons who have taken part in such dealings cannot ask courts to enforce their bargains.

The judgment must be reversed, with costs of both courts. As the nature of the arrangement appears from the showing for the plaintiff, there should be no new trial granted.

The other Justices concurred.